**BOARD OF DRAINAGE COM'RS OF Mc-CRACKEN COUNTY, for Use of MAY-FIELD CREEK DRAINAGE DIST. NO. 1, v. FLETCHER.**

**No. 5137.**

Circuit Court of Appeals, Seventh Circuit. June 30, 1934.

Charles E. Feirich, of Carbondale, Ill., and A. E. Boyd, of Paducah, Ky., for appellant.

James G. Wheeler, of Paducah, Ky., and William S. Dewey, of Cairo, Ill., for appellee.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This is an appeal from a judgment in the District Court entered upon sustaining a general demurrer to a declaration in an action on the case, to recover damages occasioned by the alleged wrongful acts of appellee to appellant's lien on certain lands owned by appellee located in Mayfield Creek Drainage District No. 1, in Carlyle county, Ky., through the cutting and removal of the timber growing on the land.

The declaration alleges that the assessments were duly levied against the land by the drainage district under the laws of Kentucky; that they were payable in twenty-seven annual installments in the years 1921 to 1947, inclusive; that the first five installments up to and including the year 1925 were paid as they fell due; that by deeds recorded September 15, 1925, and July 23, 1926, appellee became the owner of said land; that during the period of six years immediately following, no installments were paid and appellee removed the timber from the land, thereby damaging it and depreciating appellant's lien to such an extent that it was worthless. The value of the timber removed is alleged to be $25,000, and of the lien, $12,000. Appellant seeks to recover the value of the lien thus alleged to have been damaged and destroyed by appellee, including its value as security for all of said installments past due and to become due in the future.

The sole question before the court on appeal is whether the District Court erred in holding that the declaration stated no cause of action. This in turn depends upon whether a board of drainage commissioners, whose duty it is to enforce the collection of special assessments under the statutes of the state, has the right to recover damages for the removal of timber from the land covered by a lien securing these assessments.

The consideration of this question necessitates a determination of the nature of the lien given the district by the statutes of the state of Kentucky, to secure the assessment against the land involved. It is agreed by the parties that a lien of this nature, at the time it attaches and thereafter, covers not only the soil, but everything attached thereto, including timber, buildings, and crops. It is contended by appellee, however, that the owner had the right to use the land as any normal landowner would use it; to harvest and remove crops, cut timber, etc.

Judge Wham filed a written memorandum,

at the time of the decision, and discussed this question in a lucid and convincing way.[1]

Appellant has cited numerous cases wherein it is held that growing timber is a part of the land to which it is attached and a mortgagor has no right to cut timber growing on land securing the mortgage and thereby decrease the value of the security. There is a clear distinction between the rights of the holder of a mortgage upon lands and the rights of the holder of a lien of the nature here in suit. In estimating the value of land for mortgage purposes, the value of all improvements and of the timber growing thereon are all appraised and considered. The theory of a lien for special assessments is different.

"The popular as well as legal signification of special or local assessments has always indicated those impositions upon property in the immediate vicinity of a local public improvement which are necessary to pay for the improvement, and are laid with reference to the special benefit which such property derives from the expenditure of the money. The whole theory of such an assessment is generally held to be based on the doctrine that the property against which it is levied derives some special benefit from the improvement aside from the mere general advantage resulting to the community at large. The justice of demanding special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of the public work, are at the same time to suffer no pecuniary loss thereby; their property being increased in value by the expenditure to an amount at least equal to the sum they are required to pay." 25 R. C. L. 79.

In the instant case an examination of the Kentucky statute leaves no room for doubt that timber and improvements were not considered in the decision of the Kentucky court which determined that the land in question would be sufficiently enhanced in value by the drainage, to cover the cost of the drainage project. It was the value of the land for agricultural purposes that formed the basis for the decision of the Kentucky court. The timber not having been considered in establishing the value of the land upon which the lien attached, the rights of the parties holding this lien differ from those of a mortgagee.

Special assessments dare not go beyond the amount of the benefit conferred upon the assessed property by the improvement. Ky. St. § 2380b-44. In the present case the value of the land for agricultural purposes, as determined by the Kentucky court, must have been the value relied upon as security by the persons buying these bonds. The removal of the timber to make the real estate more adaptable to farming must have been contemplated. The period of time during which the lien attaches, together with the other circumstances of the case, leaves room for no other conclusion than that reached by the District Judge, that the "lien is subject to the right of the owner to use the land as a normal landowner would use it."

The demurrer was properly sustained, and the judgment of the District Court is affirmed.

---

[1] "Does this necessarily mean that during all the time there remains any unpaid assessments of this nature against the land the rightful owner thereof must maintain the land in precisely the same condition and situation with respect to things attached to or growing on the soil, and the minerals beneath, in which it was at the time the lien attached? That he cannot remove any buildings or timber or minerals without being subject to suit for damages to the lien? If the answers to the foregoing questions were in the affirmative, it would mean that at no time, in this specific case, from 1921 to 1947 could the owner cut and remove any timber from the land if in doing so he thereby lessened or depreciated the value of the land, thus impairing the value of the land. It would mean that at any time the owner did anything on the land which owners customarily do which might be looked upon by the commissioners as depreciating the value of the lien, he would be subject to a suit for damages. I cannot believe that the lien was intended to be of this far-reaching and oppressive nature without specific provision therefor in the statutes. It seems more reasonable to construe the intent of the Legislature of Kentucky to have been, and the meaning of the statute in question to be, that the lien for drainage district assessments should attach to the land in its entirety, but by reason of the nature of the assessments and the long period of thirty years over which the lien may run, that the lien is subject to the right of the owner to use the land as a normal landowner would use it. Such use, it seems to me, would properly include, where timberland is involved, cutting and disposing of the timber growing on the land whenever he deemed it advantageous to do so whether for the purpose of realizing upon the timber or for the purpose of clearing the land for agricultural purposes."